## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

RICHARD OLNEY,

          Plaintiff,

v.                                   Case No:  2:17-cv-349-FtM-29CM

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

---

## REPORT AND RECOMMENDATION[1]

    Plaintiff Richard Olney seeks judicial review of the denial of his claims for disability and disabled adult child's insurance benefits ("DAC"), disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner").   The Court has reviewed the record, the Joint Memorandum (Doc. 22) and the applicable law.   For the reasons discussed herein, the Court recommends the decision of the Commissioner be affirmed.

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.   In order to expedite a final disposition of this matter, if the parties have no objection to this Report and Recommendation, they promptly may file a joint notice of no objection.

## I.    Issues on Appeal[2]

Plaintiff raises five issues on appeal:[3] (1) whether the administrative law judge ("ALJ") improperly engaged in "sit and squirm" jurisprudence; (2) whether the ALJ's determination of Plaintiff's residual functional capacity ("RFC") failed to properly incorporate the opinions of the state agency psychologists; (3) whether the ALJ properly evaluated the opinion of consulting physician LeighAnn Wong, Ph.D.; (4) whether the jobs cited by the ALJ comply with Plaintiff's RFC; and (5) whether substantial evidence supports the existence of a substantial number of jobs that Plaintiff can perform.

## II.   Summary of the ALJ's Decision

On July 30, 2013, Plaintiff filed applications for DAC, DIB and SSI, alleging his disability began on September 1, 1999 due to anxiety, panic disorder, attention deficit hyperactivity disorder ("ADHD"), obsessive/compulsive disorder and anger issues.   Tr. 69, 82, 93, 268–89.   Plaintiff's claims were denied initially on October 15, 2013, and upon reconsideration on February 10, 2014.   Tr. 69–90, 93–101, 103–141.   On April 11, 2014, Plaintiff requested a hearing before an ALJ, which was held before ALJ Lawrence Levey on January 19, 2016.   Tr. 169–70, 38–67.   Plaintiff was

---

[2] Any issue not raised by Plaintiff on appeal is deemed to be waived.   *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

[3] For clarity and judicial efficiency, the Court will discuss Plaintiff's issues in a different order than presented in the Joint Memorandum and will address Plaintiff's first issue as two separate issues.

represented by counsel at the hearing, during which Plaintiff and vocational expert ("VE") James Newton testified.   Tr. 38, 45–65.

On February 8, 2016, the ALJ issued a decision finding Plaintiff was not disabled from September 1, 1999 through the date of the decision.   Tr. 18–28.   At step one, the ALJ found Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2005 and had not engaged in substantial gainful activity since the alleged onset date.   Tr. 21–22.   Next, at step two, the ALJ found Plaintiff had the following severe impairments: ADHD, anxiety disorder, personality disorder, obsessive-compulsive disorder, panic disorder and affective disorder.   Tr. 22.   At step three, the ALJ concluded Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   Tr. 22–24.   The ALJ determined Plaintiff had the RFC to perform work at all exertional levels, but with the following nonexertional limitations:

> [T]he claimant can only perform simple, routine and repetitive tasks, in a work environment free of fast[-]paced production requirements, one that involves only simple work-related decisions, with few, if any, work places changes, no required interpersonal interaction with members of the general public and no more than occasional interaction with co-workers and supervisors.

Tr. 24–26.   At step four, the ALJ determined Plaintiff has no past relevant work. Tr. 26.   Finally, at step five, the ALJ determined there were a significant number of jobs in the national economy Plaintiff could perform.   Tr. 27.   Thus, the ALJ concluded Plaintiff was not disabled from September 1, 1999 to February 8, 2016, the date of the decision.   Tr. 28.   The Appeals Council denied Plaintiff's request for

review on March 23, 2017, and Plaintiff subsequently filed a Complaint with this Court.   Tr. 1–4; Doc. 1.   The matter is now ripe for review.

### III.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).[4]   Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

"In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings."   *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015).   Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the

---

[4] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments.   *See e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c, 404.1527 (effective March 27, 2017), 416.920a, 416.920c, 416.927 (effective March 27, 2017); SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017).   The Court will apply rules and regulations in effect at the time of the ALJ's decision.   *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. §§ 404.1527, 416.927 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

evidence is against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).   The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review.   *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## IV.   Discussion

### a. Whether the ALJ improperly engaged in "sit and squirm" jurisprudence

In addressing the "paragraph B" criteria[5] to determine whether Plaintiff's mental impairments met or equaled a listing at step three, the ALJ found Plaintiff had moderate difficulties as to concentration, persistence or pace.   Tr. 22–23.   The ALJ explained his reasoning for this finding:

> [Plaintiff] reported in his function report that he has problems with concentration.   Dr. Lori Chang, a consultative examiner, found that [Plaintiff's] concentration and attention were within normal ranges. The undersigned notes that [Plaintiff] remained focused and engaged throughout the pendency of the hearing in this matter, which lasted approximately 50 minutes.   He testified coherently, demonstrating his ability to remain focused on the matter at hand, understand the questions posed to him, organize his thoughts appropriately, and formulate concise responses while maintaining the decorum appropriate for the setting of a hearing before an Administrative Law Judge. GAF[6] scores by treating and examining sources have generally

---

[5] 20 C.F.R., Part 404, Subpart P. Appendix 1.

[6] Global assessment of function ("GAF") is a numeric scale (0 through 100) mental clinicians use to subjectively rate an individual's social, occupational and psychological functioning at a particular moment in time. *See* American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, 32-33 (4th ed. 1994) ("DSM IV").

> reflected no more than mild to moderate impairment-related limitations, and [Plaintiff] was viewed by an examining psychologist as being capable of functioning adequately in a college-based curriculum.

Tr. 23 (internal citations omitted) (citing Tr. 441–50, 461–74, 507–24, 541–558, 568–74).

Plaintiff argues that the ALJ improperly assessed Plaintiff's concentration, persistence, or pace based on his observations at the hearing, thus engaging in "sit and squirm jurisprudence." Doc. 22. at 15–16. The Commissioner responds the ALJ did not engage in "sit and squirm" jurisprudence but noted Plaintiff's appearance and demeanor as one of many factors undermining the credibility of his allegations. *Id.* at 20. Specifically, the Commissioner argues the ALJ properly relied on Plaintiff's medical evidence, the effectiveness of his medications and his daily activities in conjunction with his behavior at the hearing. *Id.* at 21.

The Eleventh Circuit has held an ALJ engages in "sit and squirm" jurisprudence when "an ALJ who is not a medical expert will subjectively arrive at an index of traits which he expects the claimant to manifest at the hearing." *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982). An ALJ engaged in sit and squirm jurisprudence will deny a claimant's claim if the claimant does not have the expected traits. *Id.* For example, an ALJ engages in sit and squirm jurisprudence when he makes a medical assessment, "i.e., [the claimant] exhibited no significant observable physical signs which could be related to constant pain . . . ." *Id.* (internal quotation marks omitted).

The Court recommends the ALJ did not engage in sit and squirm jurisprudence but properly noted Plaintiff's appearance and demeanor in assessing the extent of Plaintiff's limitations as to concentration, persistence or pace.   Tr. 23.   "The ALJ is not prohibited from considering the claimant's appearance and demeanor during the hearing" in assessing the credibility of the claimant's subjective testimony.   *Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987) (internal quotation marks omitted).   As a result, the ALJ may rely on the fact that Plaintiff did not appear to be as limited in his ability to concentrate as he alleged.   *See id.*; *see also Cormier v. Comm'r of Soc. Sec.*, 522 F. App'x 468, 470 (11th Cir. 2013).   Here, the ALJ did not make a medical assessment of Plaintiff based on his appearance at the hearing but noted Plaintiff's ability to understand and answer questions as one of many reasons he determined Plaintiff's limitations in concentration, persistence or pace were moderate.   Tr. 23 (internal citations omitted) (citing Tr. 441–50, 461–74, 507–24, 541–558, 568–74). He also based his determination on findings from two examining psychologists and Plaintiff's treatment notes.   *Id.*   Based on the above reasoning, the Court recommends the ALJ did not engage in "sit and squirm" jurisprudence.[7]

---

[7] To the extent Plaintiff is attempting to challenge the credibility findings the ALJ made in assessing Plaintiff's RFC, the Court recommends the ALJ properly articulated his reasons for discrediting the severity of Plaintiff's alleged symptoms and substantial evidence supports those reasons—none of which involved Plaintiff's demeanor at the hearing. Specifically, the ALJ cited treatment notes generally indicating Plaintiff is doing well on medications with good symptom control and without significant side effects, numerous GAF scores ranging from mild to moderate impartment-related limitations, a consultative examiner (David Rawling, Ph.D.) opinion that Plaintiff could function adequately in college despite some issues with time pressure and a degree of social deficit, a second consultative examiner (Lori Chang, Psy.D.) finding that Plaintiff's concentration and attention were within normal ranges, and Plaintiff's testimony that medication helped with his condition.

### b. Whether the ALJ's RFC determination failed to properly incorporate the opinions of the state agency psychologists

Findings of fact made by state agency medical and psychological consultants as to the nature and severity of a claimant's impairments must be treated as expert opinion evidence of non-examining sources by the ALJ, but the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner.   20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2); SSR 96-6p, 1996 WL 374180 (July 2, 1996).   Unless a treating source's opinion is given controlling weight, the ALJ must explain the weight given to the opinions of state agency medical consultants as the ALJ does for other consultants, doctors or medical specialists.   *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006).   When determining how much weight to afford an opinion, the ALJ considers whether there is an examining or treatment relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion.   20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

In the Eleventh Circuit, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."   *Winschel*, 631 F.3d at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).   Otherwise, the

---

Tr. 25.

reviewing court cannot determine whether substantial evidence supports the ALJ's disability decision. *Id.* (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). "There is no rigid requirement, however, that the [ALJ] specifically refer to every piece of evidence in his or her decision, so long as the decision is not a broad rejection that leaves the district court [] with insufficient information to conclude whether the [ALJ] considered the claimant's medical condition as a whole." *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 557 (11th Cir. 2015) (internal quotation marks omitted). Here, the Court recommends the ALJ properly weighed the opinions of the state agency psychologists and accommodated for their findings as to Plaintiff's impairments in his RFC assessment

State agency psychologist Ann Adams, Psy.D., evaluated Plaintiff's mental RFC. Tr. 77–79. She opined Plaintiff has no significant understanding or memory limitations. Tr. 77. Dr. Adams found Plaintiff has moderate limitations maintaining attention and concentration for extended periods. *Id.* She further opined Plaintiff has moderate limitations in his ability to work in coordination with or in proximity to others without being distracted by them. Tr. 78. Dr. Adams found Plaintiff has moderate limitations in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* Dr. Adams explained, considering Plaintiff's current activities of daily living, documented diagnostic impressions, and medical records spanning almost a decade, Plaintiff will have moderate problems completing some tasks requiring

extended periods of concentration and moderate limitations working in close proximity of others because he is likely to get distracted. *Id.* Dr. Adams concluded Plaintiff will have moderate difficulty completing work days without interruptions due to his psychological impairments, namely, his anxiety disorder and ADHD. *Id.* Dr. Adams nevertheless opined that Plaintiff can concentrate for briefer time periods and can concentrate on detailed tasks with regular breaks in a setting without close or very frequent interactions with the public or coworkers. *Id.*

As to social interactions, Dr. Adams found Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors is moderately limited but concluded Plaintiff should be capable of interacting with coworkers and supervisors on a limited basis. *Id.* Dr. Adams also opined Plaintiff is moderately limited in his ability to respond appropriately to changes in the work setting but can set realistic goals independently, avoid hazards and adapt to infrequent changes in a work setting. Tr. 79.

On reconsideration, state agency psychologist Jennifer Meyer, Ph.D., echoed Dr. Adams' opinions that Plaintiff has moderate limitations in his ability to maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 125–26. Dr. Meyer explained:

> [Plaintiff] would likely have problems maintaining sustained attention/concentration and completing work tasks at a consistent pace.

> However, [Plaintiff] seems capable of sustaining attention to complete simple, repetitive tasks for 2 hour segments over an 8 hour day. [Plaintiff] seems capable of working with normal levels of supervision but would perform best in settings that require limited interaction with unfamiliar persons.

Tr. 126.   Dr. Meyer also opined Plaintiff has moderate social limitations in his ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes.   *Id.*   Dr. Meyer explained Plaintiff reported anxiety in social situations but can work in settings with limited interaction with strangers and non-confrontational supervision.   *Id.*   Dr. Meyer also opined Plaintiff is moderately limited in his ability to respond to changes in the work setting such that he would have difficulty in high-stress and fast-paced environments but could complete simple, repetitive tasks.   Tr. 126–27.

The ALJ addressed both opinions together:

> The State agency psychological consultants' assessments have been considered and are given significant weight, with the limitations posited by these consultants being reflected in the above-delineated assessment of [Plaintiff's RFC].   These consultants are deemed by regulation to be highly qualified experts in Social Security disability determination (20 CFR [§§] 404.1527(f)(2)(i), 416.927(f)(2)(i)), and their opinions are consistent with the record as a whole, within the area of their specialization, based upon a comprehensive review of the record then-extant, and uncontradicted by [Plaintiff's] treating sources.

Tr. 26.   The ALJ incorporated the above opinions, limiting Plaintiff to "a work environment free of fast[-]paced production requirements, one that involves only simple work-related decisions, with few, if any, work places changes, no required interpersonal interaction with members of the general public and no more than

occasional interaction with co-workers and supervisors." Tr. 24. The ALJ also included all of Plaintiff's mental limitations in his hypothetical to the VE. Tr. 59. After the VE identified jobs that a person with these limitations could perform, the ALJ further questioned:

> Q:   Dr. Newton - -
>
> A:   Yes, Judge.
>
> Q:   - - Mr. Olney has testified to having difficulty at times concentrating. He said his thoughts get scattered a lot. Is there any degree of employee tolerance for an employee being off task in unskilled, full-time competitive employment?
>
> A:   It would be up to 10% of the workday.
>
> Q:   So in your view would in excess of 10% off task during the workday be preclusive of full-time competitive employment?
>
> A:   That's correct, Judge.

Tr. 60.

Plaintiff argues the ALJ failed either to adopt the RFC limitations the state agency psychologists found or to explain why he was rejecting their opinions as to those limitations. Doc. 22 at 12. Specifically, Plaintiff argues the ALJ failed to properly address Dr. Adams' opinion that Plaintiff had a moderately limited ability to complete a normal workday and workweek without interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 12–13. Plaintiff argues Dr. Meyer found similar limitations. *Id.* at 13. Plaintiff contends that these interruptions and rest periods he requires prevent him from

performing work on a regular and continuing basis for eight hours a day, five days a week. *Id.* (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996)).

The Commissioner responds the ALJ properly considered the state agency consultants' opinions as to Plaintiff's functional limitations, and Plaintiff fails to address what additional limitations were left out of the ALJ's RFC finding. *Id.* at 18. The Commissioner argues both experts clarified that Plaintiff could concentrate on simple, repetitive tasks for briefer periods of time with regular breaks throughout the workday so long as his interactions with the general public or coworkers were limited, and the ALJ's RFC incorporates these limitations. *Id.* at 18–19.

The Court recommends the ALJ properly weighed the opinions of Drs. Adams and Meyer and accommodated for their findings as to Plaintiff's impairments in his RFC assessment. Both experts opined that Plaintiff would be able to concentrate on simple tasks without the added limited contact with coworkers to avoid distraction. Tr. 78, 125. To support his argument, Plaintiff cites *Brunson v. Astrue*, 850 F. Supp. 2d 1293 (M.D. Fla. 2011) and *Lea v. Comm'r of Soc. Sec.*, 776 F. Supp. 2d 1309 (M.D. Fla. 2011) as analogous cases in which the court found error for failure to incorporate moderate limitations of concentration, persistence or pace into the RFC and the ALJ's hypothetical to the VE. Doc. 22 at 13–14. *Brunson*, however, is distinguishable, and *Lea* is not persuasive. In *Brunson*, the ALJ found the plaintiff had moderate limitations in concentration, persistence or pace, but the only mental impairment in the RFC was that the plaintiff was limited to unskilled work. *Brunson*, 850 F. Supp. 2d at 1302. The court explained the ALJ's decision failed to address the impact of

the plaintiff's moderate limitations in concentration, persistence or pace on his ability to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.*   Unlike in *Brunson*, however, the ALJ here accounted for all of those issues by limiting Plaintiff to performing simple, routine and repetitive tasks, "in a work environment free of fast[-]paced production requirements, one that involves only simple work-related decisions, with few, if any, work places changes, no required interpersonal interaction with members of the general public and no more than occasional interaction with co-workers and supervisors."   Tr. 24.

In *Lea*, the ALJ found the plaintiff was limited to routine, uncomplicated, low-stress work activities and work that did not require more than occasional contact with co-workers, supervisors or the public.   *Lea*, 776 F. Supp. 2d at 1310.   In light of *Winschel*, then recently decided, wherein the Eleventh Circuit explained that an RFC limited to routine, uncomplicated and low-stress work did not necessarily account for moderate limitations in concentration, persistence and pace, the court in *Lea* remanded the case to the Commissioner for a rehearing.   *Id.* at 1313–14 (citing *Winschel*, 631 F.3d at 1179–81).   Although the RFC limitations in *Lea* are more analogous to Plaintiff's RFC, the court in that case appeared to read *Winschel* to require an explicit finding that the medical evidence indicates a claimant's ability to work is unaffected by his moderate limitations in concentration, persistence and pace.

*See Bowman v. Comm'r of Soc. Sec.*, No. 6:13-cv-614-Orl-31TBS, 2014 WL 4059140, at *5 (July 28, 2014).   In *Winschel*, the Eleventh Circuit ruled:

> In this case, the ALJ determined at step two that Winschel's mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace.   But the ALJ did not indicate that medical evidence suggested Winschel's ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical. Consequently, the ALJ should have explicitly included the limitation in his hypothetical question to the vocational expert.

*Winschel*, 631 F.3d at 1181.   Since *Winschel*, although in unpublished, non-binding decisions, the Eleventh Circuit has found an ALJ adequately accounted for moderate limitations in concentration, persistence and pace when the ALJ "included a limitation obviously attributable to moderate difficulty in concentration, persistence, or pace—in particular a restriction to simple, routine tasks."   *Bowman*, 2014 WL 4059140, at *5 (collecting cases).   Because the ALJ included limitations attributable to the moderate difficulties Drs. Adams and Meyer found with regard to Plaintiff's concentration, persistence and pace, the Court recommends the ALJ properly assessed Plaintiff's RFC.

### b.   Whether the ALJ properly weighed Dr. Wong's opinions

Plaintiff argues that the ALJ mischaracterized the opinion of examining psychologist LeighAnn Wong, Ph.D., and therefore failed to properly weigh it.   Doc. 22 at 38.   Plaintiff contends the ALJ improperly discounted Dr. Wong's consultative examination because Plaintiff's attorney arranged it.   *Id.* at 39.   Plaintiff further argues the ALJ incorrectly stated Dr. Wong found mostly mild to moderate limitations in sustained concentration and persistence because she actually found

Plaintiff had extreme limitations in Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods—the same limitation the state consultative psychologists found that the ALJ did not include in the RFC, as challenged above. *Id.* Plaintiff also points out the authority the ALJ cited in rejecting Dr. Wong's opinion is non-binding in the Eleventh Circuit. *Id.* at 39-40.

The Commissioner responds the ALJ articulated good cause for giving Dr. Wong's opinion little weight. *Id.* at 40. She argues as a one-time examining, non-treating doctor, Dr. Wong's opinion was not entitled to any deference. *Id.* at 41. The Commissioner further argues the ALJ gave several reasons to discount Dr. Wong's opinion that substantial evidence supports—namely inconsistency with other forms Dr. Wong filled out as well as Plaintiff's treating source assessments. *Id.* at 42. The Commissioner points out the ALJ also noted Dr. Wong did not read Plaintiff's medical records before and after the alleged onset date. *Id.* (citing Tr. 26, 534, 536, 537). The Commissioner also responds that form reports are entitled to little weight as the forms only required Dr. Wong to check a box or fill in a blank. *Id.*

Dr. Wong conducted a consultative examination of Plaintiff on July 22, 2015. Tr. 527–40. Dr. Wong drafted a summary of her evaluation, which noted at the outset Plaintiff's evaluation was limited to determining his suitability for social security benefits; and as such, only abbreviated intelligence/cognitive and personality testing were requested. Tr. 527. After obtaining a thorough personal history from

Plaintiff, Dr. Wong listed her observations of him, including that he was oriented to time, place and person, and was attentive, but seemed delayed when transitioning between topics.  Tr. 527–29.  Dr. Wong noted Plaintiff's speech was clear, but he spoke in a slow, measured tone and pace, sometimes mumbling.  Tr. 529.  Dr. Wong observed "[m]ild difficulties with an atypically low threshold for frustration were presented when he seemed discouraged when he perceived an answer to be incorrect or when he appeared flustered while pressed to respond."  Tr. 529–30.  Dr. Wong conducted intelligence/cognitive testing, based on which she concluded Plaintiff "has the potential to efficiently learn new things and perform better than his peers."  Tr. 530.  Dr. Wong further conducted personality testing and concluded that Plaintiff's scores indicated moderate depression and some acute emotional and/or social impairment, which is suggestive of a mood disorder as well as an anxiety disorder.  Tr. 532.  Dr. Wong summarized her results,

> [Plaintiff's] intellectual reasoning and cognitive skills ranged from High Average to Low Average.  Specifically, he demonstrated adequate or better visual fluid reasoning, verbal knowledge, short-term memory, cognitive fluency/efficiency, and processing speed, but underdeveloped long-term retrieval.  [Plaintiff's] cognitive score pattern suggests that he is an individual who efficiently utilizes and processes information from his environment; however, he is likely to require extra time and repetition in learning before achieving mastery.  Moreover, his performance may vary depending on his mental energy to regulate his attentional skills.  The personality assessments that were completed indicate that [Plaintiff] endorses high levels of depression, anxiety, impulsivity, and low frustration tolerance.  His pattern of scores suggests that he has a fragile self-esteem and a negative outlook on life.  While he yearns for success, he does not believe he has the resources or the control to gain them and putting forth the effort is mentally exhausting.  He also tends to be distrustful of others.  Due to these factors, [Plaintiff's] ability to cope with his emotions and environmental stressors is greatly diminished.  Overall, [Plaintiff] will need

> substantial support as well as [sic] to bolster his coping skills in order to moderate his mood and have more ability to control his actions. Moreover, there are some maladaptive personality traits including a tendency to be unsympathetic toward others, an unstable sense of self, and emotional reactivity that may further impede his functioning.

Tr. 532.   Dr. Wong also completed Mental Disorders worksheets to evaluate Plaintiff for Listings 12.06, 12.04, 12.08, and she completed a mental RFC assessment.   Tr. 538–39.   Under sustained concentration and persistence, Dr. Wong checked the "extreme" box for the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms to perform at a consistent pace without an unreasonable number and length of rest periods, indicating—according to the form—that Plaintiff was limited in this area 49–64% of the time.   Tr. 538.   For the remaining boxes in this section, Dr. Wong checked moderate for three activities (ability to carry out detailed instructions; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and the ability to make simple work-related decisions) and mild for three activities (the ability to maintain attention and concentration for extended periods; the ability to sustain an ordinary routine without supervision; and the ability to work in coordination with or proximity to others without being distracted by them).   *Id.*   Dr. Wong found no limitation in Plaintiff's ability to carry out very short and simple instructions.   *Id.*

The ALJ accorded Dr. Wong's mental RFC and listing assessments little weight.   Tr. 25.   The ALJ explained:

> Dr. Leigh Ann Wong, Ph.D., who examined [Plaintiff] at the request of [Plaintiff's] attorney stated that [Plaintiff] was distrustful of others, had

a tendency to be unsympathetic toward others, had an unstable sense of self, and was emotionally reactive. In light of this evidence, and on consideration of [Plaintiff's] level of activities of daily living (as discussed above), the undersigned finds that [Plaintiff] is limited to the performance of simple, routine and repetitive tasks, in a work environment free of fast[-]paced production requirements, one that involves only simple work related decisions, with few, if any, work place changes, no required interpersonal interaction with members of the general public and no more than occasional interaction with co-workers and supervisors.

The form reports by Dr. Leigh Ann Wong, a consultative examiner whose examination of [Plaintiff] was arranged by [Plaintiff's] attorney for the purpose of supporting [Plaintiff's] disability applications, are given little weight. Dr. Wong opined that [Plaintiff] had mostly mild to moderate limitations in understanding and memory; sustained concentration and persistence; social interaction; and adaption. She also stated that [Plaintiff] met listings 12.04, 12.06 and 12.08 due to allegedly marked limitations in concentration and social functioning. This is not only inconsistent with the treating source assessments, which are entitled to greater weight and are indicative of no more than moderate limitations, but is also inconsistent with other forms filled out by this examiner, which indicate that the deficits in social function and concentration were largely slight to moderate. Further, Dr. Wong specifically indicated that she had not read [Plaintiff's] medical records from before and after [Plaintiff's] alleged disability onset date. The undersigned notes also that the attorney-prepared prepared form reports in this document defined "marked" in an idiosyncratic manner, seemingly underived from the regulations. Further, and as the courts have long recognized, form reports, in which a source's only obligation is to fill in a blank or check off a box, are entitled to little weight in the adjudicative process. *See, e.g., Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (terming form reports "weak evidence at best"); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (holding that the ALJ "permissibly rejected" three psychological evaluations "because they were check-off reports that did not contain any explanation of the bases of their conclusions"); *O'Leary v. Schweiker*, 710 F,2d 1334, 1341 (8th Cir. 1983) ("[W]hile these forms are admissible, they are entitled to little weight and do not consistent "substantial evidence' on the record as a whole").

Tr. 25–26.

When determining how much weight to afford a medical opinion, the ALJ

considers whether there is an examining or treating relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion.   20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).   Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole.   SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159–60 (11th Cir. 2004).   The Eleventh Circuit has found that a doctor who examines a patient on only one occasion is neither considered a "treating physician" nor entitled to great weight.   *See Crawford*, 363 F.3d at 1160 (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).   Further, the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner.   20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2); SSR 96-6p, 1996 WL 374180.

The Court recommends the ALJ harmlessly erred in failing to state the weight he gave to the first part of Dr. Wong's opinion, contained in her written report, but did not err in giving little weight to the remainder of Dr. Wong's opinions contained within the forms.   Initially, although the ALJ referenced a part of Dr. Wong's findings from her written report—namely that Plaintiff was distrustful of others, had a tendency to be unsympathetic, had an unstable sense of self, and was emotionally

reactive— he did not explain his analysis of other parts of Dr. Wong's opinions—such as that Plaintiff is likely to require extra time and repetition in learning, that his performance may vary depending on his mental energy to regulate his attention skills, or that Plaintiff's obsessive-compulsive behaviors impeded his performance by noticeably slowing his productivity, further exacerbating his symptoms.   Tr. 25, 529, 532.   Even though the ALJ did not expressly identify the weight he gave to the entirety of Dr. Wong's opinions, the limitations she identified are accounted for in Plaintiff's RFC because he is limited to simple, repetitive tasks in an environment free of fast paced production requirements involving only simple work-related decisions, few, if any, workplace changes, no contact with the public and only occasional contact with coworkers.   Tr. 24.   Plaintiff has not established he has greater limitations than the ALJ found in his RFC; therefore, any error in failing to explicitly state the weight given to Dr. Wong's written opinion is harmless.   *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) ("We have also declined to remand for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision.")

As to the mental RFC and mental disorders checklists, the Court recommends the ALJ properly weighed Dr. Wong's opinion, and substantial evidence supports his reasoning.   First, although the ALJ cited persuasive rather than binding authority, he correctly noted that form questionnaires, or so-called "checklist" opinions, such as those completed by Dr. Wong, generally are disfavored.   *Hammersley v. Astrue*, No.

5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions."); *Jones v. Comm'r of Soc. Sec.*, 478 F. App'x 610, 612 (11th Cir. 2012) (holding that the boxes checked by the doctors did not constitute their actual RFC assessment because checking boxes did not indicate the degree and extent of the claimant's limitations).

The ALJ also cites other reasons for discounting Dr. Wong's opinions:   marked limitations in concentration and social functioning are inconsistent both with Plaintiff's treating source assessments who found no more than moderate limitations and the other forms Dr. Wong completed indicating she found slight to moderate limitations in the same areas.   Tr. 25–26.   The ALJ also noted that the definitions on the mental RFC form are not consistent with the SSA regulations.   Tr. 26.   The ALJ further noted that Dr. Wong indicated she did not read the medical records for Plaintiff before and after the alleged disability onset date.   Tr. 534, 536–37.

Although the ALJ notes that Plaintiff's attorney arranged for Dr. Wong's consultative examination, the ALJ relied on more than that fact to discount her opinion.   Doc. 22 at 39, Tr. 25.   Plaintiff cites *Mulholland v. Astrue*, No. 1:06-CV-2913-AJB, 2008 WL 687326 (N.D. Ga. Mar. 11, 2008) to establish the ALJ may not rely on the fact that Plaintiff's counsel requested the consultative examination to discredit its results.   Doc. 22 at 39.   In *Mulholland*, the court rejected the five reasons the ALJ gave for discrediting the plaintiff's diagnosis of severe, recurrent

major depressive disorder, somatoform disorder, and borderline intellectual functioning where no other doctor had given a contradictory diagnosis. *Mulholland*, 2008 WL 687326, at \*12. Only one other doctor had examined the plaintiff in that case; and his findings supported, not contradicted, the diagnosis. *Id.* The court further explained the fact that the plaintiff went to the doctor at the request of the plaintiff's attorney did not *by itself* impugn the opinion. *Id.* ("[I]n the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." (internal citation omitted)).

Unlike *Mulholland*, record evidence in this case contradicts Dr. Wong's opinion to the extent she found Plaintiff had marked limitations in concentration and social functioning because the records from Plaintiff's treating sources are indicative of no more than moderate limitations. Tr. 25, 534–35, 537, 541–58 (treatment notes reflecting, among other things, a good response to treatment, ability to stay on task with Adderall and general ability to manage anxiety and compulsion), 568–74 (treatment notes reflecting Plaintiff was doing well on medicines and OCD symptoms are under relatively good control); *see Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) ("[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."). As the ALJ noted, Dr. Wong herself also largely found slight to moderate limitations in her mental RFC assessment (with one exception, as Plaintiff points out), yet she opined that Plaintiff met listings due to marked limitations in the same areas. Tr. 25–26, 534–35, 537–39. The fact that

Dr. Wong did not review Plaintiff's medical records also is a reasonable basis for discounting her opinion because she only examined Plaintiff one time.   Tr. 26, 534, 536–37.   Because the ALJ articulated sufficient reasons for discounting Dr. Wong's opinions set forth in the forms she completed, the Court recommends substantial evidence supports the weight the ALJ accorded this portion of her opinions.   *See Crawford*, 363 F.3d at 1159-60 (finding substantial evidence supported ALJ's decision to discount doctor's opinion that Plaintiff was disabled because the opinion was unsupported by medical evidence and the doctor's own treatment notes).

    c.    *Step five determination*

    At step five of the sequential evaluation process, the burden shifts to the Commissioner to produce evidence that there is other work available in significant numbers in the national economy that the claimant can perform given her RFC. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Hale v. Brown*, 831 F.2d 1007, 1011 (11th Cir. 1987).   If the Commissioner can produce evidence of jobs available in significant numbers in the national economy that Plaintiff can perform, the burden shifts back to Plaintiff to prove she is unable to perform the jobs identified by the Commissioner.   *See Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001) (citing *Jones*, 190 F.3d at 1228).

    Here, Plaintiff argues (1) the ALJ erred by finding the jobs the VE identified comply with Plaintiff's RFC; and (2) substantial evidence does not support that a significant number of jobs exist that Plaintiff can perform.   Doc. 22 at 21-26, 31-35.

The Court recommends substantial evidence supports the ALJ's step five determination.

i. *The identified jobs' compliance with Plaintiff's RFC*

The ALJ must consider the claimant's RFC, age, education and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). In making this determination, "[t]he ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). The ALJ is permitted to consider the Dictionary of Occupational Titles ("DOT"), which is published by the Department of Labor. SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000); *see* DOT, Occupational Definitions (4th ed., rev. 1991). The ALJ also is authorized to consider the testimony of a VE as a source of occupational evidence. SSR 00-4p, 2000 WL 1898704, at *2. "[I]n order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.7 (11th Cir. 2004) (quoting *Jones*, 190 F.3d at 1229). The ALJ has an affirmative duty to "ask about any possible conflict between [the VE's testimony] and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4.

At the hearing, the VE testified there would be a representative number of jobs accommodating the hypothetical person the ALJ presented with Plaintiff's RFC—including a limitation to simple, routine and repetitive work—and identified the jobs

of laundry worker, cleaner and table worker.   Tr. 59–60.   The ALJ relied on the VE's testimony to find there are jobs that exist in significant numbers in the national economy Plaintiff can perform based on her age, education, work experience and RFC, namely the three jobs identified by the VE.   Tr. 27.   The ALJ asked the VE whether her testimony was consistent with the DOT, and the VE answered in the affirmative. Tr. 60–61.

Plaintiff argues his limitation to simple, routine and repetitive work equates to a reasoning level of 1 as defined by the DOT.[8]   *See* Doc. 22 at 22.   Thus, because the jobs of laundry worker, cleaner and table worker have a reasoning level of 2— requiring an ability to follow "detailed *but involved*" instructions—Plaintiff asserts all three jobs exceed his RFC.   *See* Doc. 22 at 22-24; Tr. 24; DOT, Appendix C: Components of the Definition Trailer, § III, General Educational Development (emphasis added).   A limitation to perform simple, routine and repetitive work, however, is not inconsistent with a reasoning level of up to 3 for unskilled work, and all three identified jobs are unskilled jobs with a specific vocational profile ("SVP") of 2.[9]   *See, e.g.*, *Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 873 (11th Cir. 2016)

---

[8]   The DOT defines reasoning level 1 as requiring the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions.   Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, Appendix C: Components of the Definition Trailer, § III, General Educational Development.   Reasoning level 2 is defined as requiring the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.   Deal with problems involving a few concrete variables in or from standardized situations."   *Id.*

[9]   The DOT defines SVP as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."   DOT, Appendix C: Components of the Definition Trailer, § II, SVP.   An SVP of 2 encompasses "[a]nything beyond a short

(finding a job with a reasoning level of 3 was consistent with unskilled, "simple work" limitations because the position also had an SVP of 2); *Hobbs v. Colvin*, No. 8:13-cv-3233-T-24MAP, 2015 WL 628763, at *5 (M.D. Fla. Feb. 12, 2015) (collecting cases finding "the requirement of Reasoning Level 2 or 3 is not inconsistent with the ability to perform only simple tasks").

Plaintiff also argues the VE's testimony that jobs with a reasoning level of 2 "would not be detailed" conflicts with the DOT, and the ALJ failed to resolve the conflict as required by SSR 00-4p.   Doc. 22 at 22-25.   Plaintiff cites the following exchange with the VE:

| | |
|---|---|
| [ATTY]: | Okay.   Now, a reasoning level of 2 – that – that's defined by the *Dictionary of Occupational Titles* as using common sense understanding to carry out detailed but uninvolved written or oral instructions.   Is that correct? |
| [VE]: | That's correct. |
| [ALJ]: | So, I guess the question was is that correct in terms of the definition of a reasoning level of 2? |
| [VE]: | Yes. |
| [ATTY]: | And the higher the reasoning level the more complex the job becomes.   Is that correct? |
| [VE]: | Correct. |
| [ATTY]: | Now, if a reasoning level 2 involves detailed but uninvolved written or oral instructions, wouldn't detailed be inconsistent with the limitation to simple instructions? |
| [VE]: | Not necessarily because of the type of work that's occurring such as the work of a cleaner.   It still would be within the parameters of that.   It still would be considered to be |

demonstration up to and including 1 month."   *Id.*

> unskilled and would not be detailed.   Like, in terms of
> detailed, you're talking about skill level of 4, 5, and up.

*Id.* at 22-23 (quoting Tr. 61-62).   Based on this exchange, Plaintiff argues the VE's testimony is inconsistent with the DOT because the VE said jobs with a reasoning level of 2 "would not be detailed," whereas the DOT defines a reasoning level of 2 as requiring the ability to carry out "detailed but uninvolved" instructions.   *Id.* at 23-24.   This argument is without merit.   The VE disagreed that a reasoning level of 2 is inconsistent with a limitation to simple instructions based on the "*type of work that*[ is] *occurring*"   Tr. 62 (emphasis added).   In other words, the VE appeared to be referring to the level of detail required for the *type of work* involved, rather than the level of detail of the *instructions* a worker might receive.   *See id.*   This impression is consistent with the hypothetical person the ALJ presented because the ALJ imposed a limitation to "*simple, routine and repetitive tasks*," not to understanding "simple instructions," as characterized by the attorney's questioning.   *See* Tr. 59, 62.   Further, the ALJ asked the VE whether his testimony was consistent with the DOT, and the VE answered in the affirmative.   Tr. 60–61; *see also* Tr. 27 (ALJ finding VE's testimony consistent with the DOT).   Therefore, the ALJ complied with SSR 00-4p and was permitted to rely on the VE's testimony.   *See Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 974–75 (11th Cir. 2012); *Jones v. Comm'r of Soc. Sec.*, 423 F. App'x 936, 398–39 (11th Cir. 2011); *see also* SSR 00-4p, 2000 WL 1898704.

    Plaintiff further asserts the jobs identified by the VE exceed his RFC because they require "temperaments" that are inconsistent with Plaintiff's limitation to

simple, routine and repetitive tasks in a work environment involving only simple work-related decisions, no fast-paced production requirements, and few, if any, workplace changes.   Doc. 22 at 25-26, 34; Tr. 24.   Plaintiff claims the laundry worker job requires the temperament of "V," characterized as "performing a variety of duties, often changing from one task to another of a different nature without loss of efficiency or composure," and the temperament of "J," characterized as "making generalizations, evaluations, or decisions based on sensory or judgmental criteria." *See* Doc. 22 at 25 (citing Doc. 22-1 at 4).   Plaintiff makes similar claims regarding the cleaner and table worker jobs, which Plaintiff indicates require a temperament of "R," characterized as "performing repetitive work or performing continuously the same work, according to set procedures, sequence or pace."   *See* Doc. 22 at 34 (citing Docs. 22-2 at 4; 22-3 at 3).   Plaintiff's source for the temperament codes appears to be Job Browser Pro by SkillTRAN.   Docs. 22-1 at 4; 22-2 at 4; 22-3 at 3.   The Court notes, however, the DOT titles for the laundry worker, cleaner and table worker positions contain no references to temperament codes or requirements inconsistent with the ALJ's RFC determination.   *See* Docs. 22-1 at 4; 22-2 at 4; 22-3 at 3; Tr. 59; DOT, 361.684-014, 1991 WL 672983; DOT, 323.687-010, 1991 WL 672782; DOT, 734.687-014, 1991 WL 679949.

The ALJ's RFC determination mirrored the hypothetical posed to the VE, the VE testified that his opinions were consistent with the DOT, and the ALJ found the VE "highly qualified by education, training, and experience."   *See* Tr. 20, 60–61; *compare* Tr. 24 (ALJ's RFC determination), *with* Tr. 59 (hypothetical posed to VE).

Therefore, the ALJ was permitted to rely on the VE's testimony, and Plaintiff's lay interpretation of the temperament codes in a Job Browser Pro report "does not undermine the reliability of the VE's opinion," especially considering there is no apparent conflict between the VE's testimony and the DOT.   Doc. 22-1 at 4; *see Leigh*, 496 F. App'x at 974-75; *Jones*, 423 F. App'x at 398–39; *Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010) ("[T]he Social Security regulations clearly allow that the Commissioner may rely on a VE for her knowledge or expertise." (citing   20   C.F.R.   §§   404.1560(b)(2),   404.1566(e),   416.960(b)(2), 416.966(e))); *Jones*, 190 F.3d at 1229; *Davis v. Berryhill*, No. 17-CV-293-N, 2018 WL 2208432, at *7-8 (S.D. Ala. May 14, 2018) (quoting *Cardone v. Colvin*, No. ED CV 13-1197-PLA, 2014 WL 1516537, at *5-6 (C.D. Cal. Apr. 18, 2014)).   The Court thus recommends substantial evidence supports the ALJ's finding that Plaintiff could perform the jobs of laundry worker, cleaner and table worker.

## ii.   *Job numbers*

Work exists in the national economy if it exists in significant numbers either in the region where Plaintiff lives or in several regions of the country, regardless of whether work exists in Plaintiff's immediate geographical area, whether specific job vacancies exist, or whether Plaintiff would be hired if he applied.   *See Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933-35 (11th Cir. 2015) (citing 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.966(a)-(c)).   As to what constitutes a "significant number" in this context, the Eleventh Circuit has not fashioned a bright line rule. As the court recently noted:

> This Court has never held that a minimum numerical count of jobs must be identified in order to constitute work that "exists in significant numbers" under the statute and regulations. We have concluded, however, that the "appropriate focus under the regulation is the national economy," not the local economy in which the claimant lives.

*Id.* at 934 (quoting *Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987)).

Here, Plaintiff argues some jobs within the OES groups for each of the four DOT titles identified by the VE are part-time and/or exceed Plaintiff's RFC, and elimination of such inapplicable positions would leave a less-than-significant number of jobs Plaintiff can perform.   Doc. 22 at 31-35.   Plaintiff acknowledges the VE used computer programs to disaggregate data from Standard Occupational Classification Codes ("SOC") data down to the DOT-title level, conducted market analysis for the laundry worker and cleaner positions, and created a report regarding his analysis, but Plaintiff argues the VE's refusal to produce the report led to a decision unsupported by substantial evidence.   *Id.* at 32.   Plaintiff asserts the VE's estimates of the job numbers for the three positions "diffe[r] dramatically from other analyses."[10]   *Id.* at 33.   Plaintiff also alleges there are a variety of factors that would erode the number of jobs that comply with Plaintiff's RFC, such as the cleaner position requiring "a verbal aptitude of up to 33%," which Plaintiff claims reflects a requirement to interact with others as prohibited by his RFC.   *Id.* at 34.

---

[10] Plaintiff states the United States Department of Labor ("USDOL") jobs number for OES group 51-6011, which contains the laundry worker job and 22 other occupations, accounts for 197,650 jobs nationally; the USDOL jobs number for OES group 37-2012, which contains the cleaner job and 8 other occupations, accounts for 917,470 jobs nationally; and the USDOL jobs number for OES group 51-9199, which contains the table worker job and 1,525 other occupations, accounts for 206,600 jobs nationally.   Doc. 22 at 33 (citing Docs. 22-1 at 11; 22-2 at 10; 22-3 at 7; 22-4; 22-5; 22-6).

The Commissioner argues Plaintiff is "unable to actually provide the specific number of jobs available in any of the three jobs identified by the VE," and Plaintiff did not calculate the number of OES group jobs that would fit his alleged RFC limitations.  *Id.* at 36.   The Commissioner contends Plaintiff's math for estimating the number of OES group jobs he can work is nevertheless flawed because it prescribes greater limitations on Plaintiff than provided in the RFC—e.g., that Plaintiff can only do jobs with a reasoning level of 1.  *Id.* at 36-37.

The Court recommends substantial evidence supports the ALJ's determination that a significant number of jobs exist in the national economy that Plaintiff can perform.   Based on the VE's testimony, the ALJ found there are a significant number of jobs in the national economy Plaintiff can perform.   Tr. 27.   The VE testified there were 118,000 laundry worker jobs, 150,000 cleaner jobs and 92,000 table worker jobs in the national economy.   Tr. 59-60.   When the ALJ asked if his opinions were consistent with the DOT, the VE answered in the affirmative.   Tr. 60-61.   Plaintiff's counsel cross-examined the VE as follows:

> [ATTY]:   Okay.   And what is the source of your job numbers?
>
> [VE]:   They emanate from the United States Department of Labor, Bureau of Labor Statistics.
>
> [ATTY]:   Okay.   Now, the Bureau of Labor Statistics – they do not count jobs by DOT code.   Is that correct?
>
> [VE]:   That is correct.
>
> [ATTY]:   They count by – is it SOC codes?
>
> [VE]:   Yes.

[ATTY]:     What does SOC stand for, please?

[VE]:       The Standard Occupational Classification.

[ATTY]:     Okay. And within an SOC code there could be many different DOT codes included, correct?

[VE]:       Yes.

[ATTY]:     So my question then would be how do you come up with a specific number for a DOT code if you're relying on data that's counted by SOC code that might include several different DOT codes?

[VE]:       Well, I use two different programs that aggregate the data.

[ATTY]:     I'm sorry, Doctor.   I was not able to understand that response.

[VE]:       I said I use different computerized programs that disaggregate the data.

[ATTY]:     Okay. So you rely on a computer program?

[VE]:       As far as that and professional judgment and skills.

Tr. 63-64.   The VE also testified on cross-examination that he had conducted market analyses for the laundry worker and cleaner positions within the year prior to his testimony.   Tr. 64–65.   The VE indicated he had written a report regarding the analysis but would be unable to produce it.   Tr. 65.

Based on the VE's testimony, it is speculative at best that the VE relied on numbers from OES groups containing part-time jobs and jobs outside Plaintiff's RFC rather than the specific DOT titles he identified.   The VE explained the process he used to determine the job numbers, and as discussed above, the ALJ's hypothetical mirrored Plaintiff's RFC, the ALJ found the VE "highly qualified by education,

training and experience, and the VE indicated his testimony was consistent with the DOT. *See* Tr. 20, 60–61, 63–64; *compare* Tr. 24 (ALJ's RFC determination), *with* Tr. 59 (hypothetical posed to VE). Therefore, the ALJ was permitted to rely on the VE's testimony despite the VE refusing to produce his written analysis and report. *See Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012) ("The Social Security regulations provide that an ALJ may rely on a VE's knowledge and expertise, and they do not require a VE produce detailed reports or statistics in support of her testimony.").

Further, although the job number data presented by Plaintiff could support an alternative finding, the question for the Court is whether substantial evidence supports the ALJ's findings, not whether the record could support a different one. *See* Doc. 22-1; Doc. 22-2; Doc. 22-3; *Parks v. Comm'r, Soc. Sec. Admin.*, 783 F. 3d 847, 850 (11th Cir. 2015); *see also Edwards*, 937 F.2d at 584 n.3; *Barnes*, 932 F.2d at 1358. Therefore, the Court recommends substantial evidence supports the ALJ's reliance on the VE to conclude that a substantial number of jobs exist in the national economy that Plaintiff could perform. *See Davis*, 2018 WL 2208432, at *5–8 (finding substantial evidence supported ALJ's determination that a significant number of jobs existed in national economy where the plaintiff alleged her SkillTRAN numbers differed dramatically from those provided by the VE because the plaintiff's interpretation of SkillTRAN data merely presented an alternative conclusion and the VE said her testimony was consistent with the DOT).

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1.      The decision of the Commissioner be **AFFIRMED.**

2.      The Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(b) in favor of the Commissioner and close the file.

   **DONE** and **ENTERED** in Fort Myers, Florida on this 30th day of July, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record