UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICHARD OLNEY,

    Plaintiff,

v.	Case No: 2:17-cv-349-FtM-29CM

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**OPINION AND ORDER**

This matter is before the Court on consideration of Magistrate Judge Carol Mirando's Report and Recommendation (Doc. #24), filed on July 30, 2018, recommending that the Decision of the Commissioner be affirmed. Plaintiff filed Objections to the Report and Recommendation (Doc. #25) on August 13, 2018, and the Commissioner filed a Response (Doc. #26) on August 17, 2018, adopting its arguments in the Joint Memorandum (Doc. #22) filed on February 14, 2018.

**I.**

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004)(citing Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997)). Substantial evidence is more than a scintilla but less than a preponderance, and is such relevant evidence as a

reasonable person would accept as adequate to support a conclusion. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005)(citing Crawford, 363 F.3d at 1158-59). Even if the evidence preponderates against the Commissioner's findings, the Court must affirm if the decision reached is supported by substantial evidence. Crawford, 363 F.3d at 1158-59 (citing Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)). The Court does not decide facts anew, make credibility judgments, reweigh the evidence, or substitute its judgment for that of the Commissioner. Moore, 405 F.3d at 1211 (citing Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)); Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)(citing Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007)(citing Martin, 894 F.2d at 1529).

## II. ALJ Findings and Conclusions

The Administrative Law Judge (ALJ) found that plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of September 1, 1999, when he was 21 years old. (Doc. #16-2, Tr. 18, 21.) In 2016, plaintiff was a 38 year old man who completed a two year associates degree program. Plaintiff claims disability due to anxiety, panic disorder, ADHD, obsessive compulsive disorder, and anger issues. (Id., Tr. 24.)

The ALJ found that plaintiff has attention deficit hyperactivity disorder, anxiety disorder, personality disorder, obsessive-compulsive disorder, panic disorder, affective disorder. The ALJ found that these impairments cumulatively cause more than a minimal effect on the claimant's ability to perform basic work activities, and therefore make for a severe combination of impairments. (Id., Tr. 22.) The ALJ found that plaintiff's physical issues did not restrict functioning. (Id.)

The ALJ found that treatment notes indicate that plaintiff is doing well on prescribed medications. Numerous Global Assessment of Function (GAF) scores ranged from mild to moderate limitations. (Id., Tr. 25.) Dr. David Rawlings, Ph.D., a consultative examiner, indicated that plaintiff could function adequately in college even though he had some problems operating with time pressures and has a degree of social deficit. (Id., Tr. 25.) In an opinion approximately 12 years previous, Dr. Rawlings found plaintiff had some problems operating with time pressures and a degree of social deficit, but could function in a college based curriculum. The ALJ gave this opinion some weight. (Id., Tr. 26.)

Dr. Lori Chang, Psy.D., a consultative examiner, found that plaintiff's concentration and attention were within normal ranges. (Id., Tr. 23, 26.) Dr. Chang found that plaintiff had average intellect, normal concentration, logical/coherent thought

processes, and no apparent memory deficit. (Id., Tr. 25.) Dr. Chang found intact recent and remote memory, mild anxiety, and fair judgment and insight. Dr. Chang's opinion was based upon a comprehensive examination of plaintiff and therefore given significant weight. (Id., Tr. 26.)

Dr. Leigh Ann Wong, Ph.D. stated that plaintiff was distrustful and unsympathetic towards others. (Id., Tr. 23.) Dr. Wong examined plaintiff at his attorney's request. Dr. Wong found that he had an unstable sense of self, and was emotionally reactive. The form reports by Dr. Wong were given little weight. Dr. Wong opined that plaintiff had mostly mild to moderate limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaption. Dr. Wong also stated that plaintiff had marked limitations in concentration and social functioning. The ALJ found this was inconsistent with the treating source assessments and other forms filled out by Dr. Wong. The ALJ also noted that Dr. Wong did not read plaintiff's medical records from before and after the alleged disability onset date. (Id., Tr. 25-26.)

The State agency psychological consultants' assessments were given significant weight as the opinions were consistent with the record as a whole, and based upon a comprehensive review of the record uncontradicted by plaintiff's treating sources. (Id., Tr. 26.)

The ALJ found plaintiff had only a mild restriction in daily activities. Plaintiff reported that he could take care of his personal care but sometimes needed to be reminded to bathe, and he could make simple meals, drive, ride in a car, shop for groceries, play interactive video games, do his laundry, and watch TV. (Id., Tr. 22.) Plaintiff also told doctors that he helped around the house, does laundry, shops for groceries, and occasionally goes to the movies. (Id., Tr. 22-23.)

The ALJ found plaintiff had moderate difficulties in social functioning. Plaintiff reported having no friends or socializing, but he plays interactive multiplayer video games. (Id., Tr. 23.)

The ALJ found plaintiff had moderate difficulties with concentration, persistence, or pace. The ALJ noted that plaintiff remained focused and engaged throughout the 50 minute hearing. More specifically, that plaintiff testified coherently, with understanding of the questions posed, in an organized fashion, and formulated concise responses while maintaining decorum appropriate for the setting. Plaintiff was viewed by an examining psychologist as being capable of functioning at a college-based curriculum. (Id., Tr. 23.) The ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms was not entirely credible. (Id., Tr. 25.)

The ALJ noted that plaintiff had not been psychiatrically hospitalized, nor had he experienced a similar episode of decompensation for the required durational period. (Id., Tr. 23.)

The ALJ noted that plaintiff had no past relevant work, and was 21 years old on the disability onset date. Plaintiff had at least a high school education and could communicate in English. Considering plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there exist jobs in significant numbers in the national economy that plaintiff could perform. (Id., Tr. 26-27.)

A vocational expert testified that plaintiff would be able to perform the requirements of a laundry worker (medium, unskilled) of which there are approximately 118,000 such jobs; a cleaner (medium, unskilled) of which there are approximately 150,000 such jobs; and table worker (light, unskilled) of which there are approximately 92,000 such jobs. (Id., Tr. 27.) The ALJ found that the testimony was consistent with the information contained in the Dictionary of Occupational Titles. The ALJ made a finding of "not disabled" because plaintiff could make a successful adjustment to other work. (Id., Tr. 27.)

### III. Magistrate Findings and Conclusions

The Magistrate Judge considered five issues on appeal: (1) whether the ALJ improperly engaged in "sit and squirm jurisprudence"; (2) whether the ALJ's determination of plaintiff's

residual functional capacity (RFC) failed to incorporate the opinions of the state agency psychologists; (3) whether the ALJ properly evaluated the opinion of Dr. Wong; (4) whether the jobs cited by the ALJ comply with plaintiff's RFC; and (5) whether substantial evidence supports the existence of a substantial number of jobs that plaintiff can perform. (Doc. #24, p. 2.)

The Magistrate Judge found that the ALJ properly noted plaintiff's appearance and demeanor in assessing the extent of plaintiff's limitations as to concentration, persistence or pace. The Magistrate Judge noted that the ALJ is permitted to rely on the fact that plaintiff did not appear to be as limited in his ability to concentrate at the hearing. The Magistrate Judge found that the ALJ did not make a medical assessment based on plaintiff's appearance at the hearing, and therefore the ALJ did not engage in sit and squirm jurisprudence. The Magistrate Judge also noted that the ALJ articulated reasons for discrediting the severity of plaintiff's alleged symptoms unrelated to plaintiff's demeanor at the hearing.

The Magistrate Judge found that the ALJ properly weighed the opinions of the state agency psychologists, and incorporated their opinions in limiting plaintiff's work. The Magistrate Judge noted that the ALJ included all of plaintiff's mental limitations in his hypothetical to the vocational expert, and after jobs were identified, the ALJ further questioned Dr. Newton regarding

plaintiff's off task percentage based on plaintiff's difficulty concentrating.

The Magistrate Judge found that the ALJ properly weighed the opinions of Dr. Ann Adams Psy.D. and Jennifer Meyer, Ph.D., the agency consultants. The Magistrate Judge found that the ALJ properly assessed plaintiff's RFC because the ALJ included limitations attributable to the moderate difficulties Drs. Adams and Meyer found with regard to plaintiff's concentration, persistence and pace.

The Magistrate Judge found that the ALJ erred in failing to state the weight he gave to the first part of Dr. Wong's opinion, but that it was harmless because it was not error to give little weight to the remainder of Dr. Wong's opinions contained within the forms. The Magistrate Judge noted that plaintiff had not established that he had greater limitations than the ALJ found, and the limitations Dr. Wong identified were accounted for in plaintiff's RFC.

The Magistrate Judge found that the ALJ properly weighed Dr. Wong's opinion with regard to the mental RFC and mental disorders checklists, and substantial evidence supported the reasoning. The Magistrate Judge found that the ALJ articulated sufficient reasons for discounting Dr. Wong's opinions in the forms, and substantial evidence supported the weight given this portion of her opinions.

The Magistrate Judge found that substantial evidence supported the ALJ's step five determination. The ALJ's RFC determination mirrored the hypothetical posed to the vocational expert, the vocational expert testified that his opinions were consistent with the Dictionary of Occupational Titles, and the ALJ found that the vocational expert was qualified to testify. Therefore, the Magistrate Judge found that the ALJ'S finding that plaintiff could perform the jobs of laundry worker, cleaner and table worker was supported. The Magistrate Judge found that the ALJ's determination that a significant number of jobs exist in the national economy and reliance on the vocational expert was also supported by substantial evidence.

**IV. Medical Objections to the Report and Recommendation**

**A. State Agency Psychologists**

Plaintiff argues that Dr. Adams found plaintiff to be moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. Plaintiff argues that Dr. Meyer also found plaintiff moderately limited. Plaintiff argues that he could not perform work on a regular and continuing basis due to these interruptions and rest periods. Plaintiff objects that the ALJ failed to discuss theses RFC limitations found by the State agency psychologists.

Dr. Adams found that the restrictions on daily living were mild, and that plaintiff had moderate difficulties in maintaining social functioning, concentration, persistence or pace. (Doc. #16-3, Tr. 75.) Dr. Adams found no significant understanding or memory limitations, and found that plaintiff was not significantly limited in his ability to carry out very short and simple instructions, or to carry out detailed instructions. Dr. Adams found plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods, but not significantly limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (Id., Tr. 77.) Dr. Adams noted plaintiff was not significantly limited in his ability to sustain an ordinary routine without special supervision, or the ability to make simple work-related decisions, but plaintiff was moderately limited in the ability to work in coordination with or in proximity to others without being distracted by them. Dr. Adams explained that plaintiff would have moderate limitations working in close proximity to others, and therefore moderate difficulty completing work days without interruptions but that plaintiff could concentrate with regular breaks throughout the day if close or frequent interactions with the public or with coworkers is limited. (Id., Tr. 78.) As to social interaction limitations, Dr. Adams found that plaintiff was moderately limited in his ability to

accept instructions and respond appropriately to criticism from supervisors. (Id.) Dr. Adams found plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting but that plaintiff can set realistic goals independently, and can avoid normal hazards and adapt to infrequent changes in a work setting. (Id., Tr. 79.)

On reconsideration, Dr. Meyer also found only mild restriction of activities of daily living. (Id., Tr. 122.) Dr. Meyer found that plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods, the ability to work in coordination with or in proximity to others without being distracted by them, and moderately able to complete a normal workday and workweek. (Id., Tr. 125-126.) Dr. Meyer found that plaintiff was capable of sustaining attention to complete simple, repetitive tasks for 2 hour segments over an 8 hour work day. (Id., Tr. 126.) Dr. Meyer determined that plaintiff would respond best to non-confrontational supervision, and would have difficulty appropriately responding to changes in high stress and fast-paced work environments but that plaintiff was capable of adapting to simple or gradual changes. (Id., Tr. 127.)

The ALJ found that plaintiff had moderate difficulties in social functioning, and concentration, persistence or pace. The ALJ stated that he gave the State agency psychological consultants

significant weight, and stated that the limitations expressed by Dr. Adams and Dr. Myer were reflected in plaintiff's RFC.  (Doc. #16-2, Tr. 26.)  The ALJ clearly reflected on the findings based on the non-exertional limitations set for simple, routine, and repetitive tasks, with few work place changes, and no required interaction with members of the public, and no more than occasional interaction with co-workers.  (Id., Tr. 24.)  The Court finds that the decision is supported by substantial evidence.  The objection is overruled.

**B. Dr. Wong**

Plaintiff argues that the ALJ failed to properly assess the opinion of Dr. Wong because he overlooked her opinion that plaintiff had extreme limitations in the ability to complete a normal workday and workweek without interruptions.  Plaintiff also argues that the fact that Dr. Wong was arranged by counsel is not reason to discount the opinion of the consultative examiner.

As a preliminary matter, there is nothing in the ALJ's opinion to support a conclusion that the ALJ considered and discounted Dr. Wong's opinion because she was arranged by counsel.  As further discussed below, the ALJ gave little weight to the form reports, but clearly considered the remaining findings.  This objection is overruled.

Plaintiff was referred to LSW Psychological Services by counsel for a "limited focus psychological evaluation to determine

his suitability for social security benefits." (Doc. #16-10, Tr. 527.) Dr. Wong examined plaintiff, and found he adequately followed directions and appeared to answer candidly, but required a slower pace and extra time throughout the evaluation. (Id., Tr. 529.) Dr. Wong found that plaintiff exhibited mild difficulties with an atypically low threshold for frustration when he was discouraged, perceived his answer to be incorrect, or when he appeared flustered while pressed to respond. (Id., Tr. 529-530.) Dr. Wong observed some symptoms of anxiety. Plaintiff's IQ fell in the high average range, indicating an ability to learn new things and perform better than his peers. (Id., Tr. 530.) Plaintiff was found to demonstrate high average cognitive efficiency and average cognitive fluency skills. Plaintiff's ability to process simple information quickly fell in the average range, and his short-term memory was in the high average range. (Id., Tr. 531.) Plaintiff's long-term memory was in the low average range, and he struggles to organize and store visual information into long-term memory, and to recall that information. However, plaintiff could retrieve learned knowledge once stored. Dr. Wong also administered a personality test and assessed his anxiety, depression, and panic related symptoms. (Id., Tr. 531-532.)

Dr. Wong diagnosed plaintiff with obsessive-compulsive disorder with fair insight, generalized anxiety disorder,

unspecified depressive disorder, unspecified personality disorder, academic underachievement despite adequate cognitive potential, and other problems related to psychosocial circumstances. (Id., Tr. 533.)  The ALJ referenced the Summary of Results by Dr. Wong, noting the finding that plaintiff tends to be distrustful and has a tendency to be unsympathetic toward others. (Id., Tr. 23, 25, 532.)  The ALJ further noted Dr. Wong found plaintiff had an unstable sense of self and that he was emotionally reactive.  In light of this evidence, the ALJ imposed limitations for simple, routine and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work related decisions with few if any work place changes and no required interpersonal interaction. (Id., Tr. 25.)  However, the form reports completed by Dr. Wong were given little weight because they are inconsistent with the treating source assessments – "which are entitled to greater weight and are indicative of no more than moderate limitations", and inconsistent with Dr. Wong's other forms showing slight to moderate social functioning and concentration. (Id., Tr. 25-26.)

The Mental Residual Functional Capacity Assessment (Doc. #16-10, Tr. 538) checked off mostly moderate to mild for understanding and memory, sustained concentration and persistence, social interaction, and adaptation.  Dr. Wong checked extreme for only one element of sustained concentration and persistence finding

that the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  It is this one inconsistent finding that plaintiff argues the ALJ overlooked.  It is clear that the ALJ considered the form but gave it little weight because of the inconsistency in the one element with other findings.  The objection is overruled.

**V. Vocational Objections to the Report and Recommendation**

Plaintiff argues that the jobs identified by the vocational expert do not comply with the RFC.  Plaintiff argues that the three jobs require the ability to follow detailed instructions, which conflicts with the RFC's limitations.  Plaintiff argues that the jobs carry a reasoning level of R2, and only jobs requiring a reasoning level of R1 are limited to simple tasks.

The ALJ told the vocational expert that plaintiff had testified to having difficulty at times concentrating, and that his thoughts get scattered.  The ALJ asked the vocational expert "[i]s there any degree of employer tolerance for an employee being off task in unskilled, full-time competitive employment."  The vocational expert responded that it would be up to 10% of the workday, so it would preclude full-time competitive employment.  (Doc. #16-2, Tr. 60.)  Counsel questioned the vocational expert as to whether a reasoning level 2, which involves detailed but involved written or oral instructions, would be inconsistent with

the limitation to simple instructions.  The vocational expert testified "[n]ot necessarily" because of the type of work being done, and that it would still be within the parameters of unskilled and not detailed.  (Id., Tr. 62.)

A laundry worker, a cleaner, and all have a specific vocational preparation time (SVP) of 2, which ranges from anything beyond short demonstration up to and including 1 month. Dictionary of Occupational Titles (DOT), Appendix C: Components of the Definition Trailer, § II, SVP).  All three jobs also are unskilled work "which needs little or no judgment to do simple duties that can be learned on the job in a short period of time", usually in 30 days.  20 C.F.R. § 404.1568(a).  Therefore unskilled and a job with an SVP of 2 are consistent.

All three jobs also have a reasoning level of 2.  DOT, Appendix C: Components of the Definition Trailer, § III, General Educational Development (GED).  A reasoning level of 2 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."  (Doc. #22-1, Exh. A, p. 1.)  The vocational expert addressed the reasoning level of 2 and stated that the occupations would not be detailed because of the type of work involved.  The Eleventh Circuit has noted that jobs with reasoning levels of 2 or 3 may also be jobs with simple tasks.  Chambers v. Comm'r of Soc.

Sec., 662 F. App'x 869, 873 (11th Cir. 2016). The Court finds, as in Chambers, that plaintiff has not shown that the jobs require "more mental capacity than allowed for in the limitations outlined by the ALJ." Id. The objection is overruled.

Plaintiff also argues that the laundry worker job requires a temperament level of V, but there was no testimony or apparent conflict between the vocational expert's testimony and the DOT, which does not include temperament. The objection is overruled.

After an independent review, the Court agrees with the findings and recommendations in the Report and Recommendation.

Accordingly, it is now

**ORDERED:**

1. The Report and Recommendation (Doc. #24) is **accepted and adopted** by the Court.

2. Plaintiff's Objection (Doc. #25) is **OVERRULED**.

3. The Decision of the Commissioner of Social Security is **affirmed**.

4. The Clerk of the Court shall enter judgment accordingly and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this ___13th___ day of September, 2018.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Hon. Carol Mirando
U.S. Magistrate Judge

Counsel of Record